IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUDY G. ROBINSON,

               Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

             Defendant.

CIVIL ACTION FILE NO.

1:05-CV-0283-JFK

## ORDER AND WRITTEN OPINION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for disability insurance benefits and supplemental security income.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** for further proceedings.

**I.**    **Procedural History**

Plaintiff Judy G. Robinson filed an application for disability insurance benefits and supplemental security income on August 22, 2000, alleging that she became disabled on September 15, 1999.  [Record ("R.") at 46-51].  After her application was

denied initially and on reconsideration, she requested an administrative hearing, which was held on April 15, 2003, before an Administrative Law Judge ("ALJ"). [R. at 25-28, 35-39, 213-58]. A decision was issued by the ALJ on June 17, 2003, denying Plaintiff's claims. [R. at 19-24]. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on November 26, 2004, making the hearing decision the final decision of the Commissioner. [R. at 4-6]. On January 31, 2005, Plaintiff filed the above-styled action in this court seeking review of the final decision. [Doc. 1].

## II.    Facts

Plaintiff Judy G. Robinson, fifty-six (56) years old at the date of the ALJ's decision, has past work experience as a social services aide, census enumerator, and security guard. [R. at 17]. The ALJ found that Plaintiff has a possible tear of left knee meniscus, pain throughout body without etiology, and degenerative disc disease with mild stenosis of C5, C6, and C7. [R. at 19, 20]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [Id.]. The ALJ found that Plaintiff was able to perform her past relevant work as a social services aide,

2

census enumerator, and security guard, and that she has skills transferable to sedentary work.  [Id.].

The ALJ's decision [R. at 16-22] states the relevant facts of this case as modified herein as follows:

The claimant is a fifty-six (56) year old individual with a GED.  Her past work experience includes employment as a census enumerator, security guard, health services technician, social service aide and manager.  She alleges that she became disabled on September 15, 1999, due to stenosis degenerative disc disease, difficulty in using her right hand and arm, knee problems and depression.  After the date of alleged onset of disability, the claimant worked in 2000 and 2001 but earned less than the substantial gainful activity level.

The claimant presented at the Emergency Room of Bellevue Hospital Center on February 8, 2000.  She complained of left knee pain after tripping and falling onto her knees.  Examination revealed abrasions to the left knee but range of motion was good.  X-rays of the left knee and cervical spine revealed no acute fracture or dislocation. Motrin was prescribed.  (Exhibit 4F).

Richard O. Kling, M.D., examined the claimant on February 10, 2000.  She complained of pain in her neck, back and left knee and ankle.  The claimant was

3

ambulating with crutches with difficulty.  Upon examination, the claimant was 5'7" tall and weighed 200 pounds.  The abdomen was soft, non-tender and non-distended. Valsalva sign was positive to the cervical spine.  Deep tendon reflexes were 2+ and equal.  Right and left rotation of the cervical spine exacerbated the pain in the bilateral sternocleidomastoids.  The left knee and ankle were extremely tender to palpitation. Dr. Kling was unable to evaluate straight leg raising, toe touch, and walking on toes and heels due to pain.  He referred her for physical therapy and chiropractic care for her neck and back.  The claimant continued to complain of left knee pain at further examination by Dr. Kling.  An MRI of the left knee performed on March 24, 2000, revealed a possible tear of the posterior horn of the lateral meniscus (noted only on the coronal images), normal medical meniscus, no areas of bone contusion and normal cruciate and collateral ligaments.  (Exhibit 6F/4-14).

The claimant presented at the Emergency Room of Our Lady of Mercy Medical Center on March 25, 2000.  She complained of lower abdominal pain radiating to the hypogastric region.  Upon examination, there was tenderness in the left lower quadrant with mild distention and guarding.  The claimant was admitted and started on IV fluids and Flagyl.  A CT scan of the abdomen revealed the possibility of mild diverticulitis of

4

the sigmoid colon.   The claimant's condition improved, and she was released on March 27, 2000.  Final diagnosis was nonspecific colitis.  (Exhibit 5F).

The claimant returned to Dr. Kling on August 9, 2000.  Her left knee was still very painful, and she had an antalgic gait.  Dr. Kling recommended an arthroscopy. (Exhibit 6F).

Peugoo Wittian, M.D., a non-examining state agency medical consultant, reviewed the medical evidence of record on December 28, 2000.  He opined that the claimant was limited to lifting/carrying twenty (20) pounds occasionally and ten (10) pounds frequently and to only occasional climbing, balancing, stooping, kneeling, crouching and crawling.  (Exhibit 7F).

The claimant presented at the Emergency Room of Grady Memorial Hospital on January 21, 2001.  She complained of headaches, chills and fever, nausea, confusion and eye pain.   Depression and headaches were diagnosed, and the claimant was prescribed Motrin.  Cervical spine x-rays performed on January 9, 2002, revealed degenerative disc disease of C5-6 and C6-7 and uncal vertebral hypertrophy at C5-6 bilaterally and mild cervical foraminal stenosis.   A colonoscopy was performed on March 15, 2002, and revealed moderate sigmoid internal hemorrhoids.   A repeat colonoscopy was recommended in five (5) years time. On April 9, 2002, x-rays of the

5

left knee and of the lumbosacral spine were negative.  The claimant complained of hand/arm numbness on May 23, 2002, and was referred to the hand clinic for a hand brace.  On June 17, 2002, the claimant fell and hurt her nose.  X-rays revealed a nasal fracture without soft tissue swelling which may have signified an old fracture.  An MRI of the cervical spine was to be performed the same day but the claimant left against medical advice.  The next day a bone density test of the spine and hip was performed.  The spine bond mineral density was osteopenic while the hip bond density was normal. (Exhibit 10F).

John S. Muller, Ph.D., performed a psychological consultative evaluation on October 4, 2002.  The claimant stated that she was not under the care of a mental health professional.  She further stated that she had one visit at the Clifton Community Health Center in 2001 but never followed up with treatment due to not having the money to do so.  The claimant complained of a history of depression dating back to 1999.  She stated that at first her depression was related to the death of her mother but that it was now related to her physical problems and lack of financial resources.  She further complained of sleep problems (inferring that she had sleep apnea) and pain.  She denied auditory and visual hallucinations.  She stated that she had been socially active

6

but now found herself not wanting to be around others.  The claimant further stated that she was able to cook, clean and travel unaccompanied.

During the clinical interview, the claimant's psychomotor activity was diminished; she ambulated with the aid of a cane; and she wore a hand brace.  The claimant did not bring her eyeglasses with her, and she complained of difficulty seeing visual items when tested.  Dr. Muller found her affect full and always appropriate to verbal content.  Memory and concentration were found to be within normal limits.

A WAIS-III was administered, and claimant recorded a verbal IQ score of 90, a performance IQ score of 86, and a full scale IQ score of 88.  Dr. Muller opined that the claimant's slow psychomotor activity, hand brace and depression all contributed to an approximately ten (10) to twelve (12) point decline in intellectual functioning.  A WRAT-3 was administered, and the claimant recorded a reading standard score of 101 (post-high school equivalence) and an arithmetic standard score of 92 (8th grade equivalence).  A Benton Visual retention Test – 5th Edition was also administered.  The claimant's performance suggested a mild visual impairment.  Dr. Muller opined that the claimant's performance on this test might have been influenced by visual problems and depression.

7

Dr. Muller diagnosed dysthymic disorder.  He opined that the claimant had only mild symptoms of depression.  He further opined that the claimant had fair (limited but satisfactory) ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out complex job instructions; that she had a good (more than satisfactory) ability to maintain attention/concentration, maintain personal appearance, and understand, remember and carry out detailed job instructions; and that she had an unlimited ability to follow work rules, use judgment, and understand, remember and carry out simple job instructions.  (Exhibit 8F).

The claimant presented at the DeKalb Grady Clinic on February 13, 2003.  She stated that she fell on February 8, 2003.  She also stated that she had blood in her stool for two (2) days and that her legs burned and hurt all the time.  Upon examination, the claimant's blood pressure was 145/85; her abdomen was tender; and there was mild tenderness in the left lower paraspinal area.   Hypertension, hemorrhoids and osteoarthritis were diagnosed, and the claimant was prescribed Docusate Sodium, Motrin, Tylenol and $CaCO_3$.  (Exhibit 9F).

8

The claimant testified at the hearing that she is 5'7" tall, weighs 230 pounds and is right handed. She further testified that she had numbness and swelling in her hands, constant back pain, left leg pain, muscle spasms in her legs, vision problems, crying spells, depression and problems sleeping and concentrating. The claimant stated that the medications she takes for her various ailments affect her stamina and balance. She further stated that she could stand for long periods of time but that she cannot step up on a ladder. The claimant testified that walking is painful and that she uses a prescribed cane. The claimant further testified that she did not want to have the surgery recommended by Dr. Kling. She stated that she was prescribed glasses and that they help her read.

Mr. Decker, a vocational expert, testified that the claimant has past relevant work of census enumerator (semi-skilled light exertion work), security guard (semi-skilled light exertion work), health services technician (semi-skilled medium exertion work), social services aide (semi-skilled light exertion work), and manager (semi-skilled medium exertion work). He further testified that the claimant has skills which would transfer to sedentary work. In response to a hypothetical question which assumed an individual with the same age, education, past relevant work, and residual functional work as the claimant, Mr. Decker testified that such an individual could perform the

claimant's past relevant work of social services aide, census enumerator and security guard.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.  The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards.  See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984).  Substantial evidence is more than a scintilla, but less than a

10

preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  If the claimant satisfies her burden of proving disability with respect to her former type of work the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five (5) step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether a claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether claimant can

11

perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2000.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations.  (20 CFR §§ 404.1520(b) and 416.920(b)).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The ALJ found the claimant's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision.

12

6.   The ALJ stated that he carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. (20 CFR §§ 404.1527 and 416.927).

7.   The claimant has the residual functional capacity to perform light exertion work reduced by only occasional climbing, balancing, stooping, kneeling, crouching and crawling; and slight to medium pain.

8.   The claimant's past relevant work as census enumerator, security guard, and social services aide did not require the performance of work-related activities precluded by her residual functional capacity. (20 CFR §§ 404.1565 and 416.965).

9.   The claimant's medically determinable impairments, possible tear of left knee meniscus, pain throughout body without etiology, and degenerative disc disease with mild stenosis of C5, C6 and C7, do not prevent the claimant from performing her past relevant work.

10.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 CFR §§ 404.1520(e) and 416.920(e)).

[R. at 21].

## V.   Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Judy Robinson had not engaged in any substantial gainful activity since her alleged onset date. [R. at 17]. At the second step, the ALJ determined that Plaintiff has a possible tear of left knee meniscus, pain throughout body without etiology, and degenerative disc disease with mild stenosis of C5, C6, and C7. [R. at 19]. Although

13

these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  [R. at 19].  The ALJ found at the fourth step of the sequential evaluation that Plaintiff was able to perform her past relevant work as a social services aide, census enumerator, and security guard and that she has skills transferable to sedentary work.  [R. at 20].  Accordingly, the ALJ concluded that Plaintiff was not disabled.  [Id.].

Plaintiff Robinson contends that the ALJ erred and makes a number of arguments in support thereof.  [Doc. 13].  Plaintiff first argues that substantial evidence does not support the ALJ's finding that Plaintiff retains the residual functional capacity to perform light work.  [Doc. 13 at 10-14].  Plaintiff also contends that the ALJ erred in finding that her depression was a non-severe impairment which caused no functional limitations and in failing to conduct an analysis of her depression as required by Social Security regulations.  [Doc. 13 at 14-21].  Plaintiff Robinson's final argument is that the ALJ erred by not properly evaluating her subjective complaints and by not addressing the side effects of her medications.  [Doc. 13 at 21-26].  The court will first address Plaintiff's arguments regarding the ALJ's findings and analysis of her depression.

14

### A.    Plaintiff's Depression

The primary evidence in the record of Plaintiff Robinson's alleged mental impairments came from the report of Dr. Muller, who performed a psychological consultative evaluation on October 4, 2002.  [R. at 172-80].  Dr. Muller diagnosed Plaintiff with dysthymic disorder, or depression.  [R. at 19, 176-77].  He found that she had mild symptoms of depression which included the "inability to enjoy activities that she usually finds pleasurable, slight social withdrawal, and sleep difficulties."  [R. at 177].  Dr. Muller also opined on a form entitled "Medical Assessment of Ability to do Work-Related Activities (Mental)" that Plaintiff had a fair ability, defined as limited but satisfactory, to do the following: relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; function independently; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; and understand, remember, and carry out complex job instructions.  [R. at 178-79].  Dr. Muller found that Plaintiff's cycle of depression began when her mother died in 1999 but that she "now reports the depression is because of her physical situation and lack of financial resources."  [R. at 174, 176].  A WAIS-III was administered, and Plaintiff recorded a verbal IQ score of 90, a performance IQ score of 86, and a full scale IQ score of 88.  [R. at 175].  Dr. Muller opined that Plaintiff's slow psychomotor activity,

15

hand brace and depression all contributed to an approximately ten (10) to twelve (12) point decline in intellectual functioning.  [R. at 175].  Plaintiff takes Paxil for her depression.  [R. at 172, 243].

In his decision, the ALJ noted the findings of Dr. Muller but concluded that Plaintiff's depression was not a severe impairment.  [R. at 19-21].  The ALJ based this finding on the fact that "the claimant has at least a satisfactory ability top [sic] perform the mental tasks required of remunerative work."  [R. at 19].  Plaintiff argues that substantial evidence does not support the ALJ's finding, and the court agrees.

The Eleventh Circuit has repeatedly stressed, "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).  Whether an impairment is severe is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  In the present case, Dr. Muller found that "Ms. Robinson's overall coping ability is reduced because of her depressive symptoms."  [R. at 178].  Although Dr. Muller found that Plaintiff's ability to make occupational, performance and social adjustments was at least satisfactory, he

16

concluded that her depression did, in fact, limit her abilities in numerous areas.  [Id.].

Plaintiff's depression also contributed to a ten (10) to twelve (12) point decline in her

IQ scores.  [R. at 175].  Given these facts, Plaintiff's depression was more than a trivial

impairment or slight abnormality, and it would be expected to interfere with her ability

to work.  Substantial evidence does not support the ALJ's finding that Plaintiff's

depression does not constitute a severe impairment, and remand is warranted on this

basis.

Plaintiff Robinson next contends that the ALJ erred in failing to conduct an

analysis of her depression in accordance with 20 C.F.R. § 404.1520a and its

companion regulation, 20 C.F.R. § 416.920a.  The Eleventh Circuit has held that if a

claimant is able to present a "colorable claim of mental impairment," then the ALJ is

required to complete a psychiatric review technique form ("PRTF") or evaluate the

mental impairment in accordance with the "special technique" dictated by the PRTF

and its accompanying regulation.  Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir.

2005); 20 C.F.R. § 404.1520a.  "This technique requires separate evaluations on a four-

point scale of how the claimant's mental impairment impacts four functional areas:

'activities of daily living; social functioning; concentration, persistence, or pace; and

episodes of decompensation.'"  Moore, 405 F.3d at 1213.

17

The Commissioner concedes that the ALJ failed to analyze Plaintiff's depression pursuant to the PRTF and 20 C.F.R. §§ 404.1520a, 416.920a.   [Doc. 14 at 12]. However, the Commissioner contends that "at most this omission by the ALJ should be considered harmless error because any . . . analysis on a non-severe mental impairment would not likely alter the ALJ's findings. . . .   [O]nce an impairment is found to be non-severe, the ALJ does not have a duty to consider that impairment any further in the sequential evaluation."   [Doc. 14 at 12-13].   The court finds the Commissioner's argument on this issue to be unpersuasive.

First, as discussed *supra*, substantial evidence does not support the ALJ's finding that Plaintiff's depression was a non-severe impairment.   Second, even assuming *arguendo* that Plaintiff's depression was not severe, this fact does not permit the ALJ to dispense with evaluating the mental impairment in accordance with the "special technique" dictated by the PRTF.   Part of the analysis as prescribed by 20 C.F.R. § 404.1520a is used to determine whether a mental impairment is severe or non-severe.   20 C.F.R. § 404.1520a(d).   By making the "harmless error" argument on this point, the Commissioner is essentially saying that an ALJ who determines that a mental impairment is non-severe is not required to use the prescribed evaluation technique, which determines whether an impairment is severe or non-severe.   Eleventh Circuit

18

caselaw is clear: "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions.  Failure to do so requires remand."  <u>Moore</u>, 405 F.3d at 1214 (disagreeing with Commissioner's argument that "remand is unnecessary as it would require no more than the ALJ's rote completion of the PRTF").  An ALJ faced with a completely frivolous claim of mental impairment would not need to complete a PRTF, but Plaintiff Robinson's claim of depression does not fall within this exception.

Furthermore, as Plaintiff points out, the Commissioner is incorrect when she states that the ALJ is not required to consider an impairment in the sequential evaluation after it is found to be non-severe.  Social Security Ruling 96-8p explicitly requires the ALJ, when assessing a claimant's residual functional capacity ("RFC"), to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p.  The ruling goes to explain: "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim."  <u>Id.</u>  In the present case, the

ALJ's decision indicates that he gave no consideration to Plaintiff's depression in making the RFC assessment.  [R. at 20].

For all these reasons, the court finds that substantial evidence does not support the ALJ's finding that Plaintiff's depression was a non-severe impairment. The ALJ also failed to apply proper legal standards when he failed to evaluate Plaintiff's depression pursuant to 20 C.F.R. §§ 404.1520a, 416.920a, and when he did not consider her depression in making the RFC assessment.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** to the ALJ for further proceedings in accordance with the discussion *supra*.

### B.    ALJ's Finding that Plaintiff has the RFC to Perform Light Work

The ALJ determined that Plaintiff Robinson is able to "perform light exertion work reduced by only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and slight to medium pain."  [R. at 20].  The ALJ wrote that he based this determination primarily on the RFC assessment of Dr. Peugoo Wittian, a non-examining state agency medical consultant, who reviewed the medical evidence of record on December 28, 2000.  [Id.; R. at 164-71].  Dr. Wittian's opinion, according

20

to the ALJ in his decision, "is well supported by the medical record as a whole and is not contradicted by any other opinion." [R. at 20]. Plaintiff argues that substantial evidence does not support the ALJ's finding. [Doc. 13 at 10-14].

Plaintiff testified that she has difficulty standing and walking because of knee and leg pain, that she "mostly slide[s]," and that she has frequent falls. [R. at 222-25, 235-40]. She had a fall a couple of days before the hearing because her "knees gave way." [R. at 222-23]. Plaintiff uses a cane, which was prescribed by her doctor in 1997, and she believes that she could not walk a block without it. [R. at 239-40]. Medical records, including an MRI, which revealed a possible tear of Plaintiff's left knee miniscus, support her claim that her left leg gives out at times and that she experiences falls. [R. at 151-52, 155].

Given the difficulty Plaintiff has with walking, she argues that substantial evidence does not support the ALJ's finding that she was capable of performing light work. Social Security Ruling 83-10 provides that light work "requires a good deal of walking or standing" and that this requirement is "the primary difference between sedentary and most light jobs." SSR 83-10. The ruling notes, "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. . . . Many unskilled light jobs are performed primarily in one

21

location, with the ability to stand being more critical than the ability to walk." SSR 83-10.

The Commissioner responds by noting that SSR 83-10 provides that a "job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." SSR 83-10. The ruling states that a light job which involves sitting most of the time is usually a skilled or semi-skilled job and Plaintiff's past relevant work of census enumerator, security guard, and social services aide are all semi-skilled work. Id. The Commissioner also argues that substantial evidence supports the ALJ's finding because Plaintiff testified that she can stand for a long period of time, and, as noted supra, SSR 83-10 provides that with respect to unskilled jobs, "the ability to stand [is] more critical than the ability to walk." [R. at 238].

The Commissioner's arguments are not without merit; however, the court finds them to be unpersuasive. The Commissioner notes that light jobs which mostly involve sitting are usually skilled or semi-skilled jobs, and that Plaintiff's past relevant jobs were semi-skilled. But the record evidence reveals that Plaintiff's work as a security guard and a social services aide involved at least six (6) hours of standing or walking in an eight (8) hour workday, which is what is required in most light exertional level

22

positions.  [R. at 52, 226-28].  There was no testimony about the walking/standing requirements for Plaintiff's job as a census enumerator, but this job, which lasted only a few months, was found by the Administration to be an unsuccessful work attempt. [R. at 60, 63].

The Commissioner also argues that the ALJ's RFC assessment is supported by Plaintiff's testimony that she can stand for a long period of time.  Plaintiff did not say what she meant by this statement, and when asked about it, she responded, "Standing, could I say I'd much rather stand than sit?"  [R. at 238].  Plaintiff also testified, "It hurts me to sit down for a long period of time."  [R. at 239].  When Plaintiff was asked how long she could sit before she needed to stand or change positions, she replied, "About a half an hour or so."  [Id.].  If half an hour is Plaintiff's idea of a "long period of time," then her statement that she was able to stand for this long does not support the ALJ's RFC finding.  Furthermore, there is no evidence which contradicts Plaintiff's testimony that she has great difficulty walking, has frequent falls, and requires the use of a cane.  All of these limitations would affect Plaintiff's ability to carry out the demands of light work, even with respect to jobs that require more standing than walking.

AO 72A
(Rev.8/82)

The ALJ wrote in his decision that he "considered the claimant's testimony and notes that she refused to have arthroscopic surgery to have her possible tear of left knee meniscus repaired.  This suggests that it is not as severe as she has suggested." [R. at 20].  During the hearing, Plaintiff discussed her reasons for electing not to have the knee surgery.  She testified that the surgeon told her that even if she had the surgery, she would still have arthritis all of her life.  [R. at 246-47].  Plaintiff also stated, "[I]f somebody would give me something concrete, and let me know that the operation would help me, then I would have the operation."  [R. at 247].  Social Security Regulation 96-7p requires the ALJ to consider a claimant's explanations for not pursuing medical treatment.  However, there is no indication that the ALJ considered Plaintiff's explanations in the present case.

For these reasons, the court finds that substantial evidence does not support the ALJ's determination that Plaintiff was capable of performing light work, most of which requires the ability to stand and/or walk for approximately six (6) hours during a workday.  This is another reason why this case must be remanded.  Upon remand, the ALJ should explicitly address Plaintiff's testimony regarding her ability to stand and walk, as well as the testimony about her frequent falls, when he makes his RFC assessment.  If the ALJ finds that Plaintiff's testimony is not credible, then he should

24

articulate his reasons for making this credibility determination.   See Viehman v. Schweiker, 679 F.2d 223 (11th Cir. 1982).

### C.   Plaintiff's Subjective Complaints and Medication Side Effects

Plaintiff Robinson's final arguments are that the ALJ erred by not addressing the side effects of her medications and that substantial evidence does not support the ALJ's finding that her complaints of severe back pain were not credible.  [Doc. 13 at 21-26].   Because the court has found that remand is warranted for the reasons discussed *supra*, an extensive discussion addressing these arguments is not necessary. The court simply notes that Plaintiff is correct in arguing that the ALJ did not address the side effects caused by her numerous medications, even though she repeatedly testified about this issue at the hearing.  [R. at 222-23, 234-38].  The ALJ has a duty to develop the record fully, and part of that duty includes eliciting testimony and making findings with respect to medication side effects.  See Cowart v. Schweiker, 662 F.2d 731, 737 (D.C. Ga. 1981) ("The ALJ further failed in his duty to develop the record fully because he neither elicited testimony nor made any findings regarding the effect of Mrs. Cowart's prescribed medications upon her ability to work.").   Upon remand, the ALJ should make findings regarding the effects of Plaintiff's medications on her ability to work.  [R. at 82].  The ALJ should also address Plaintiff's complaints

of back pain upon remand and, as the court noted with respect to her testimony regarding her ability to stand and walk, adequately explain any reasons for discrediting her complaints.

## VI.    Conclusion

For all the foregoing reasons and cited authority, it is **ORDERED** that the decision of the Commissioner denying benefits be **REVERSED** and that this action be **REMANDED** for further proceedings in accordance with the above discussion. See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this 23rd day of JANUARY, 2006.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

26